**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JULIO ANTONIO HERNANDEZ POPOCATI, | : | Civil No. 1:26-CV-01108 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court is a petition for writ of habeas corpus under 28 U.S.C. § 2241 filed by Petitioner Julio Antonio Hernandez Popocati ("Hernandez Popocati"). (Doc. 1.) Hernandez Popocati argues that he is being wrongfully detained. For the reasons that follow, the court will grant Hernandez Popocati's petition and order a bond hearing before an immigration judge.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Hernandez Popocati is a native and citizen of Mexico. (Doc. 9-2, p. 6.)[1] He entered the United States sometime in 2007 in Texas without being admitted, inspected, or paroled. (*Id.*) There is no additional immigration history for Hernandez Popocati.

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

On November 26, 2025, Hernandez Popocati was convicted of open lewdness in Easton, Pennsylvania, and sentenced to time served.  (*Id.* at 7.)  Once paroled on his Pennsylvania conviction, Hernandez Popocati was taken into custody by Immigration and Customs Enforcement ("ICE") on November 27, 2025.  (*Id.* at 6.)  He was issued a notice to appear on November 27, 2025, charging him under the Immigration and Nationality Act ("INA") §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I).  (Doc. 9-3.)  Hernandez Popocati is detained at Pike County Correctional Facility and had an immigration hearing scheduled for June 1, 2026.  (Doc. 1, p. 1; Doc. 9-4.)

On April 28, 2026, Hernandez Popocati filed a petition for writ of habeas corpus requesting release from detention against U.S. Immigration and Customs Enforcement and Craig Lowe, Warden of Pike County Correctional Facility (collectively, "Respondents").[2]  (Doc. 1.)  Respondents filed a response on May 13, 2026, and Hernandez Popocati did not file a traverse.[3]  (Doc. 9.)  Thus, this petition is ripe for review.

---

[2] Respondents submit that the only proper respondent is Craig A. Lowe because he is the Warden of Pike County Correctional Facility.  (Doc. 9, p. 1, n.1.)  In this case, consistent with *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004), Petitioner has named the Warden as a respondent.  *Padilla*, 542 U.S. at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent.")  The court will not address an argument requesting dismissal of other Respondents when only raised in a footnote.

[3] The court notes that a supplemental declaration was submitted to the court on May 28, 2026.  (Doc. 10.)  Because this declaration was filed by someone other than Hernandez Popocati, the court did not consider it in deciding this case.

## STANDARD OF REVIEW AND JURISDICTION[4]

Pursuant to 28 U.S.C. § 2241(c)(3), a district court may consider a writ of habeas corpus when an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." Claims related to an immigration detainee's request for release from confinement must be brought as a habeas petition as these "claims fall within the 'core' of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 167 (2022)). Jurisdiction for "core habeas petitions . . . lies in only one district: the district of confinement." *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)) (internal quotations omitted). Hernandez Popocati is detained at Pike County Correctional Facility, which is within the Middle District of Pennsylvania. *See* 28 U.S.C. § 118(b).

## DISCUSSION

In his pro se petition, Hernandez Popocati argues that he was improperly detained. (Doc. 1.) Hernandez Popocati submits that *Zadvydas v. Davis*, 533 U.S. 678 (2001) controls and that he has been detained for an excessive amount of time. (*Id.*) Hernandez Popocati requests that he be immediately released from custody. (Doc. 1, p. 8.)

---

[4] Unlike prior habeas petitions before this court that presented similar issues, Respondents do not argue that the court lacks subject matter jurisdiction in this case, thus, the court will not address that issue here. (*See* Doc. 9.)

Respondents submit that Hernandez Popocati is detained pursuant to Section 1225(b)(2)(A). (Doc. 9, pp. 1–2.) They assert that Hernandez Popocati falls within the statutory definition of "applicant for admission," he is properly detained under Section 1225(b)(2), and Section 1226(a) is inapplicable to him. (*Id.* at 4–22.) Respondents submit that the plain language of Section 1225(b)(2) requires detention of applicants for admission and that the section's reference to noncitizens "seeking admission" does not narrow the scope of Section 1225(b)(2). (*Id.* at 5–18.) They further argue that their interpretation of Section 1225(b)(2)(A) does not make Section 1226(a)'s discretionary detention authority superfluous and *Jennings* does not undermine Respondents' interpretation. (*Id.* at 18–22.) Respondents also assert that Hernandez Popocati's temporary detention does not violate due process. (*Id.* at 22–26.)

Section 1225 of the INA is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. It defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . ." *Id.* § 1225(a)(1). Section 1225(b)(2)(A) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

4

Noncitizens subject to this mandatory detention may only be released while their removal proceedings are pending "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288. The BIA recently decided *Matter of Yajure Hurtado*, 29 I. & N. Dec. 2016 (Sept. 5, 2025), wherein the BIA held that noncitizens who enter the United States without admission are subject to mandatory detention under Section 1225(b)(2)(A), and thus, immigration judges lack the authority to provide a bond hearing.

Conversely, 8 U.S.C. § 1226(a) provides, in relevant part:

(a) Arrest, detention, and release
On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
   (1) may continue to detain the arrested alien; and
   (2) may release the alien on—
        (a) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
        (b) conditional parole; but
   (3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

5

Hernandez Popocati is detained pursuant to Section 1225(b)(2)(A) and neither party alleges that Hernandez Popocati is subject to Section 1226(c).[5] (*See* Docs. 1, 9.)

The Second, Sixth, and Eleventh Circuit Courts of Appeals and federal district courts across the country and within this district have, overwhelmingly, rejected Respondents' position regarding the applicability of Section 1225(b)(2)(A) to detainees like Hernandez Popocati, a noncitizen who previously entered and had been living in the United States prior to his detention.[6] *See, e.g., Cunha v. Freden*, 175 F.4th 61 (2d Cir. Apr. 28, 2026) (holding that petitioner's "detention is governed by Section 1226(a), not Section 1225(b)(2)(A)"); *Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891, --- F 4th ---- (6th Cir. May 11, 2026) (same); *Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, __ F.4th __, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6, 2026) (same); *Hernandez v. Kunes*, No. 1:25-cv-1847, 2026 WL 411726 (M.D. Pa. Feb. 13, 2026) (Wilson, J.) (holding Section 1225(b) was inapplicable to petitioner); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, No. 3:25-cv-1896, 2025

---

[5] Section 1226(c) requires detention of noncitizens who are inadmissible or deportable because they have committed a criminal offense identified in this section. 8 U.S.C. § 1226(c).

[6] The court acknowledges that there are some district courts, as well as the Fifth and Eighth Circuit Courts of Appeals, who have agreed with Respondents' interpretation of Section 1225. (*See* Doc. 8, p. 2–3.) *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). However, none of these decisions are binding on this court.

WL 3513152 (M.D. Pa. Dec. 8, 2025) (Wilson, J.) (adopting report and recommendation finding that Section 1225 was inapplicable to petitioner); *Patel v. O'Neil*, No. 3:25-cv-2185, 2025 WL 3516865, at *4 n.7 (M.D. Pa. Dec. 8, 2025) (collecting cases within the Third Circuit as of December 8, 2025); *Quispe v. Rose*, 3:25-cv-2276, 2025 WL 3537279 (M.D. Pa. Dec. 10, 2025) (holding that petitioner was improperly detained under Section 1225(b)(2)(A)); *Patel v. O'Neill*, 3:25-cv-2289, 2026 WL 323121 (M.D. Pa. Feb. 6, 2026) (same).  "The vast majority of courts confronting this precise issue have rejected the Government's interpretation, and the BIA's interpretation of *Hurtado*, as contradictory to the plain text of § 1225."  *Demirel*, 2025 WL 3218243 (citing *Ayala Amaya v. Bondi*, No. 25-16429, 2025 WL 3033880, at *2 (D.N.J. Oct. 30, 2025) (collecting cases)).

The court is persuaded by and agrees with the Second, Sixth, and Eleventh Circuit Courts of Appeals and the majority of federal district courts that have ruled on this issue to date in rejecting Respondents' interpretation of Section 1225(b)(2)(A).  Hernandez Popocati's detention under Section 1225(b)(2)(A) is unlawful because Section 1225(b)(2)(A) "applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States."  *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025).  Thus, this section simply does not apply to someone like Hernandez Popocati, who has been residing in the

7

United States for approximately nineteen years. *Id.* (collecting cases adopting the same conclusion).

In reaching this conclusion, the court holds that Respondents' interpretation of "seeking admission" violates the rule against surplusage and contradicts the plain meaning of the statutory text. *Bethancourt Soto*, 807 F. Supp. at 406 (finding that respondents' interpretation "violates the rule against surplusage and negates the plain meaning of the text."); *see also Patel*, 2025 WL 3516865, at *5 (citing *Centeno Ibarra v. Warden of Fed. Det. Ctr. Phila.*, No. 25-cv-6312, 2025 WL 3294726, at *5 (E.D. Pa. Nov. 25, 2025)) (same). If Section 1225(b)(2)(A) applied to every "applicant for admission," the phrase "seeking admission" would become unnecessary and surplusage.[7] *Bethancourt Soto*, 807 F. Supp. 3d at 406–07 (citations omitted); *see also United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023) (explaining that "every clause and word of a statute should have meaning" and "no clause, sentence, or word shall be superfluous, void, or insignificant"). Further, "seeking admission" connotes "some affirmative,

---

[7] *Bethancourt Soto*, 807 F. Supp. 3d at 407, provides a helpful example of why Respondents' interpretation violates the rule against surplusage:

> [R]emoving the words "seeking admission" from § 1225(b)(2)(A) would not alter its meaning under Respondents' theory: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]" That result is inconsistent with the principle that courts must interpret a statute to give meaning to "every clause and word" that Congress chose to include. *See* Polansky, 599 U.S. at 432, 143 S.Ct. 1720 (quotation marks omitted).

present-tense action" such that it "requires an act currently underway not a static condition." *Id.* at *5 (citations omitted). Thus, Respondents' argument that Section 1225(b)(2)(A) does not require any "affirmative act" is contrary to the plain meaning of the words "seeking admission."[8]

Respondents' interpretation also makes Section 1226(c)'s mandatory detention provision superfluous and redundant. *Centeno Ibarra*, 2025 WL 3294726 at *6 ("Under the government's interpretation, § 1225 would require such mandatory detention regardless of criminal charges or convictions. If this was the case, Congress would have no need to create additional requirements for mandatory detention.").

In sum, Hernandez Popocati is not currently "seeking admission" to the United States. That was his status in 2007. Therefore, Section 1225(b)(2)(A) does not apply to him as he is not currently "seeking admission" to the United States.

---

[8] Again, the examples provided by the court in *Bethancourt Soto*, 807 F. Supp. 3d at 406–07, are illustrative of why Respondents' argument fails:

> For example, one could deem every person in the country a "potential homebuyer," but they are not "seeking to buy a home," without taking some affirmative action towards that goal. Nor is every "employable adult" in the country "applying for a job," simply because jobs exist. Or, as Judge Ho explained in *Benitez*, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there." *Benitez*, —— F.Supp.3d at ——, 2025 WL 2371588, at *7. Further, "[e]ven if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' ... at that point— one would say that they had entered unlawfully but now seek a lawful means of remaining there." *Id.*

Addressing Hernandez Popocati's constitutional claims, it is undisputed that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted).  Thus, the court must determine what process is due to Hernandez Popocati, who is currently subject to mandatory detention without a bond hearing, by applying the balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *Mathews* requires the court to weigh three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

The first factor weighs heavily in Hernandez Popocati's favor because the "official action" has deprived him of his physical liberty.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests—the interest in being free from physical detention by one's own government.").  The second factor similarly swings in Hernandez Popocati's favor because he "is presently and *erroneously* detained under the mandatory detention provisions of § 1225, without

10

an opportunity for a bond hearing." *Bethancourt Soto*, 807 F. Supp. 3d at 409

(emphasis in original).  As to the third factor, the court recognizes Respondents'

interest in detaining noncitizens to ensure "the appearance of aliens at future

immigration proceedings" and "preventing danger to the community."  *Zadvydas*,

533 U.S. at 690.  Still, this factor weighs in favor of Hernandez Popocati because

Respondents do not contend that he poses a danger to the community or that he is a

flight risk.  Accordingly, the *Mathews* factors weigh in Hernandez Popocati's favor

and the court finds that his mandatory detention without a bond hearing under

Section 1225(b)(2)(A) violates his procedural due process rights.  *See Bethencourt*

*Soto*, 2025 WL 2976572 at *8 ("Taken together, the Court finds that the *Mathews*

factors weigh decisively in Petitioner's favor, and as such his mandatory detention

under § 1225(b)(2)(A) violates his procedural due process rights.") (citations

omitted); *Patel*, 2025 WL 3516865 at *6 (holding same).  Thus, the court will

grant Hernandez Popocati's petition.  However, because an immigration official

has not yet made a determination regarding release or bond for Hernandez

Popocati, the court will order an individualized bond hearing before an

immigration judge to occur within fourteen days.

11

## CONCLUSION

For these reasons, the court will grant Hernandez Popocati's petition for writ of habeas corpus and order an individualized bond hearing before an immigration judge within fourteen days.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: June 3, 2026